IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TENET HEALTHCARE CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:11-CV-732-M |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH, and W. LARRY CASH, | § § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss [Docket Entry #40]. The Motion is **GRANTED** and Plaintiff's claims are **DISMISSED with prejudice**.

### I.    Background and Procedural History

Plaintiff Tenet Healthcare Corporation ("Tenet") seeks a judgment against Defendants Community Health Systems, Inc. ("CHS"), Wayne T. Smith, and W. Larry Cash for its costs and disbursements incurred in connection with analyzing and opposing Defendants' preliminary proxy materials. CHS initially attempted to acquire Tenet in a cash and stock transaction in November 2010. The Tenet Board rejected CHS's offer and thereafter, CHS went public with its acquisition proposal. From December 2010 to May 2011, CHS made various preliminary proxy filings with the Securities and Exchange Commission ("SEC"), preparatory to potential later efforts to effectuate a merger with Tenet and nominate a slate of directors for the Tenet Board. CHS's proxy materials included assertions concerning the value of a CHS acquisition of Tenet and statements touting the benefits of synergies between the companies. Tenet alleges that

CHS's materials contained materially false and misleading statements and omissions, and claims it had difficulty substantiating synergies. It says it engaged in an analysis of CHS's business, and found that its hospital admissions practices were improper, rendering the alleged synergies non-existent. Tenet contends the significant costs it incurred in analyzing CHS and its proxy solicitation materials were designed to allow it and its shareholders to fairly consider and oppose CHS's efforts.

Tenet filed its original Complaint on April 11, 2011, seeking injunctive and declaratory relief and damages under Section 14(a) of the Securities and Exchange Act of 1934 and SEC Rule 14a-9. CHS then made additional efforts to acquire Tenet, but upon Tenet's rejection of CHS's final offer in May 2011, CHS withdrew its proposed slate of candidates for Tenet's Board. Tenet then amended its Complaint to recover its costs to analyze CHS, its bids, and its proposed slate. Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.   Analysis

Defendants argue under Federal Rule of Civil Procedure 12(b)(1) that Tenet lacks standing under Section 14(a) to recover its costs as claimed. Defendants argue that Section 14(a) authorizes only private causes of action for shareholders with voting rights. Tenet argues that its claim for damages is brought on behalf of its voting shareholders, and that because it was in the best position to protect the voting process on their behalves, it has standing to sue.

Four opinions of the United States Supreme Court are particularly relevant to the issues presented here. In *J.I. Case Co. v. Borak,* the Supreme Court ruled that shareholders could assert a private action for damages and other relief under Section 14(a), either individually or in a

derivative suit.[1] In finding a private right of action under Section 14(a) based upon misleading statements, the Supreme Court concluded that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" behind the statute.[2] Here, Tenet argues that *Borak's* holding should be extended to suits brought by the target corporation in a proxy fight, since such a suit seeks to protect shareholders from incurring investigative and analytical expenses in investigating a proxy filer.

The broad language of *Borak* as to the duty of courts in implying a private right was addressed by the Supreme Court almost thirty years later in *Virginia Bankshares Inc. v. Sandberg*.[3]  There, the Supreme Court held that minority shareholders, whose votes were not required to effectuate the corporate action subject to the proxy solicitation, did not have standing to sue under Section 14(a).[4]  In so holding, the Supreme Court emphasized the importance of ascertaining congressional **intent**, rather than congressional **purpose**, in determining whether a private remedy exists.[5]  The Supreme Court analyzed the legislative history of Section 14(a), noting that Congress intended to protect "fair corporate suffrage" and the "free exercise" of shareholders' voting rights from false and misleading statements, but emphasizing that Congress had been "reticent" to articulate the extent to which it sought to protect these rights through private suits.[6]

Subsequent Supreme Court decisions have further narrowed the holding of *Borak* to its specific facts.  In *Alexander v. Sandoval*, the Supreme Court again focused on congressional intent as a basis for finding an implied private right of action, rather than on congressional

---

[1] *J.I. Case Co., et al. v. Borak*, 377 U.S. 426, 431-32 (1964).
[2] *Id.* at 433.
[3] *Virginia Bankshares Inc., et al. v. Sandberg,* 501 U.S. 1083, 1104 (1991).
[4] The Fifth Circuit later stated categorically that "voting rights are critical to standing under Section 14(a)." *See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 230 (5th Cir. 1994).
[5] *Virginia Bankshares* 501 U.S. at 1104.
[6] *Id*. at 1103-04.

purpose as it had done in *Borak*.[7] The Supreme Court reiterated that in *Virginia Bankshares,* it had already narrowed *Borak's* scope. Finally, in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, the Supreme Court again cautioned against judicially-created causes of action when a private right of action was not the subject of expressed congressional intent.[8]

Two district courts addressing the issue of whether a target corporation has standing to sue for damages under Section 14(a) have reached opposite conclusions. In *Diceon Electronics v. Calvary Partners, L.P.*, the court concluded that granting standing to a target corporation to claim damages under Section 14(a) would impermissibly extend *Borak* and other case law seemingly "contrary to the legislative intent behind § 14(a)."[9] The court in *Diceon* found that the congressional intent behind Section 14(a), to protect shareholders from misleading statements, would not be thwarted by denying a target corporation standing to sue for damages. In looking at the legislative history, the court noted that Congress enacted Section 14(a) for the benefit of shareholders, not management. The court stated that Congress intended for Section 14(a) to ensure the flow of accurate information to shareholders confronted by a proxy solicitation and was intended for situations where "corporate democracy is most likely to fail, namely, where management, unopposed, solicits proxies."[10]

Reaching a result contrary to that in *Diceon*, the court in *International Jenson Inc. v. Emerson Radio Corp.* held that a target corporation could recover its expenses in response to another party's use of improper proxy solicitations, finding that when "a corporation incurs

---

[7] *Alexander v. Sandoval,* 532 U.S. 275, 287 (2001).
[8] *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148, 165 (2008).
[9] *Diceon Electronics v. Calvary Partners, L.P.*, 772 F.Supp. 859, 869 (D. Del. 1991).
[10] *Id.*

expenses in reaction to another party's use of improper proxy solicitations, it is in reality the shareholders who are harmed."[11]

This Court concludes, based on the focus on congressional intent mandated by *Virginia Bankshares,* that it cannot infer "any congressional urgency to depend on implied private actions [by target corporations] to deter violations of § 14(a)" especially through the type of damages Tenet seeks here.[12]  Even if Tenet had standing to recover damages that shareholders might recover for fraud, such damages do not include costs it incurred in evaluating and analyzing proxy solicitation materials and investigating the company that produced them.

The Court notes that many of the authorities relied upon by Tenet, such as *Studebaker Corp. v. Gittlin*[13] and *Ameribanc Investors Group v. Zwart,*[14] were decided before *Virginia Bankshares* and were suits for injunctive relief or for corrective disclosures, not damages.  Tenet also relies on *KBR v. Chevedden*, but in *Chevedden*, the issuing corporation sought a declaration that a shareholder proposal could be excluded from its proxy materials. The court reasoned that since the shareholder could have sued to have his proposal included in the proxy materials, it followed logically that the issuing corporation had standing to seek a declaration that the proposal could be excluded.[15] That conclusion is not helpful to the issues here.

Other cases relied on by Tenet, *Wininger v. SI Management, L.P.*,[16] *CNW v. Japonica Partners, L.P.*,[17] *Maldonado v. Flynn,*[18] and *In re Haas,*[19] do not support Tenet's position.  The

---

[11] *International Jenson Inc. v. Emerson Radio Corp.*, Nos. 96-cv-2816, 96-cv-6902, 1997 WL 43229 at *5 (N.D. Ill. Jan. 24, 1997).
[12] *Virginia Bankshares Inc., et al. v. Sandberg,* 501 U.S. at 1104.
[13] *Studebaker Corp. v. Gittlin*, 360 F.2d 692 (2d Cir. 1966).
[14] *Ameribanc Investors Group v. Zwart*, 706 F.Supp. 1248, 1254 n.12 (E.D. Va. 1989). The court, in finding standing, explicitly noted that in "the case at bar, plaintiff seeks corrective disclosures, not damages."
[15] *KBR Inc. v. Chevedden*, 776 F.Supp.2d 415, 427 (S.D. Tex. 2011).
[16] *Wininger v. SI Management, L.P.*, 33 F.Supp 2d 838 (N.D. Cal. 1998).
[17] *CNW v. Japonica Partners, L.P.*, 776 F.Supp. 864 (D. Del. 1990). *Japonica* was decided before the same court decided *Diceon*, *supra*.
[18] *Maldonado v. Flynn*, 477 F.Supp. 1007 (S.D.N.Y. 1979).

damages for which the courts permitted recovery in those cases were for costs associated with a second proxy solicitation, or a response to the allegedly false proxy materials, not the costs those corporations incurred in conducting due diligence prior to bringing a claim under Section 14(a), as Tenet seeks here. Further, only *Wininger* was decided after *Virginia Bankshares*. None of those cases support the proposition that expenses such as those sought here can be recovered by the target corporation under Section 14(a).  In this Court's view, those cases do not support the proposition that a corporation has standing to recover damages of the type sought here, but even if they did, the Court would find, in applying the analysis of *Virginia Bankshares,* that there is not evidence of congressional intent to grant standing for the target corporation to recover such damages under Section 14(a).

For these reasons, the Court concludes that Defendants' Motion to Dismiss under Rule 12(b)(1) should be **GRANTED**.  As a result, the Court does not reach Defendants' Rule 12(b)(6) Motion.  Plaintiff's suit is **DISMISSED with prejudice**.

SO ORDERED.

March 21, 2012.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[19] *In re Haas*, 36 B.R. 683 (Bankr. N.D. Ill., January 19, 1984).